[No. 6,883.—Department One.]

## ZENAS CHURCHILL v. ALEXANDER ANDERSON ET AL.

STATE LANDS—ASSIGNMENT OF LOCATION.—The right to purchase State lands is a personal privilege, which cannot be transferred by direct assignment or otherwise. So *held*, in a case where the assignor had made his application, and received his certificate of location before making the assignment.

ID.—PATENT—FRAUD.—A patent for State lands was issued to the plaintiff as the assignee of a certificate of purchase issued to one C; and in an action of ejectment by the patentee against an occupant of the land, the defendant offered to prove that C made the application (under the Act of April 27th, 1863) for the plaintiff's use and benefit, (having been hired by the plaintiff to

do so) and further offered to prove that the plaintiff never took the loyalty oath required by the statute. *Held*, upon the first point, that the defendant could not take advantage of the fraud claimed to have been practiced upon the State or its officers; and upon the second, that O was the only person with whom the State officers could treat as the person *for whose benefit* the proceeding was taken; and that to say that the officers were deceived, and the State thereby defrauded, is but a restatement of the point first considered.

ID.—ID. — APPLICATION TO PURCHASE — AFFIDAVIT. — Where a contest has arisen, and been referred to the District Court, as to the right of the parties to purchase State land, it has been held that certain omissions in the application or affidavits render the application so defective, that the applicant cannot base a claim to purchase upon it, but such omissions do not destroy the effect of a *patent*, as evidence of title, against a mere trespasser or occupant.

ID.—ID.—ID.—ID.—If the authority to issue a patent *depend upon the existence of particular facts in reference to the condition or location of the property, or the performance of certain antecedent acts*, and officers appointed for the ascertainment of these matters in advance, have passed upon them, and given their judgment, then the patent, though the judgment of the officers be in fact erroneous, cannot be attacked collaterally by parties showing title subsequently from the same source, much less by those who show no color of title in themselves.

APPEAL from a judgment for the plaintiff, and from an order denying a new trial, in the Twentieth District Court, County of San Benito. BELDEN, J.

*Moore, Laine & Leib*, for Appellant.

*McKesick & Rankin*, for Respondent.

McKINSTRY, J.:

On the seventh day of March, 1870, the premises in controversy were listed to the State by the Commissioner of the General Land Office, with the approval of the Secretary of the Interior, as lands in lieu of 16th and 36th sections; and on the 5th of May, 1870, the State of California, by its proper officers, issued and delivered to plaintiff its patent for the lands described in the complaint, thereby granting the same to plaintiff.

At the trial defendants offered to prove that prior to May, 1867, one H. M. Hulett—the land being then vacant—took possession of it, built a small house, and claimed it as his own, until May 2nd, 1867, when he *sold and conveyed* all his right, title, and interest in it to defendant Anderson, who then went into possession of it, and has claimed it as his own ever since; also, to introduce a certified copy of the application of said Hulett

to the State to purchase said land, with the affidavits, acceptance of the State Locating Agent, his certificate of location, and the indorsements thereon, all in one document; also, to prove that on the 12th day of June, 1872, the defendant *Anderson* made application in due form to the State of California to purchase said land, and that the Surveyor-General rejected said application, and refused to receive or file it, because a patent had already issued to plaintiff as hereinbefore stated.

Section 4 of the Act of April 27th, 1863, (Stat. of 1863, p. 591) requires that when any resident of the State desires to purchase any portion of a 16th or 36th section, or lands in lieu thereof, he shall file with the State Locating Agent an affidavit that he is a citizen of the United States, or has filed his declaration of intention to become a citizen; that he is of lawful age, and is a resident of the State, and that the lands sought to be purchased are unoccupied, except by the applicant; that there are no improvements on said lands other than his own, and that to the best of his knowledge and belief there is no valid claim existing to said land adverse to his own, etc.    The 28th section of the same act provides, that no location of land, or any proceedings in accordance therewith, shall be construed to give any title to or interest in or right of possession, etc., unless the person for whose benefit the location is made, etc., shall have taken an oath to protect and defend the Constitution and Government of the United States against all enemies, whether domestic or foreign, any ordinance or law of any State, convention, or legislature, or any rule or obligation of any society or association, etc., to the contrary notwithstanding, etc.; and that this was done without any mental reservation, etc.; and that the oath was not taken for the purpose of acquiring title, etc., in order that such title, etc., may be transferred to any person, to enable such person to evade the provisions of any law of the State, or any regulation of the General Land Office at Washington.

A reading of these provisions renders it obvious that the right to purchase lands like those in controversy here is a personal privilege, which cannot be transferred by direct assignment or otherwise.

It follows that defendant, Anderson, did not succeed to Hulett's right to contest plaintiff's claim to purchase the State

title. It is equally clear that he did not acquire such *status*, by virtue of his own application, (filed after plaintiff's purchase had been completed and patent had issued) as authorized him to claim that the legal title which has passed to plaintiff was held in trust for *him*. He was not in privity with plaintiff, nor with a common or paramount source of title. The case is not like *Rosecrans* v. *Douglass*, 52 Cal. 214. There it was held that the State had never acquired any title to the land in controversy.

It is said, however, that the patent is void, "because it clearly appeared that plaintiff had no right to the demanded premises, except by virtue of an application made to purchase the same by one Clark, and that such application was for the use and benefit of the plaintiff, (he hired Clark to do it) and it was made under the Act of April 27th, 1863." The point of appellant thus stated, includes an admission that the application of Clark was in every respect proper in form, but that Clark was suborned by plaintiff to commit perjury by swearing that the application was for his own benefit, and that the State officers were imposed upon by the fraud thus practiced upon them. It is not necessary to inquire whether the evidence offered would have established the alleged fraud. It is enough to say that defendant cannot, in this action at law, and under the mere denials of the averments in the complaint, take advantage of the fraud claimed to have been practiced upon the State or its officers.

It is further urged by appellant, that he had the right to prove that plaintiff was the party really interested in the application made by Hulett, in connection with the further fact that plaintiff never took the "loyalty oath" required by the statute of 1863, for the reason that if such oath was not taken by the real party in interest, the patent subsequently issued to plaintiff is *void*.

The 28th section of the Act of April 27th, 1863, reads: "No location of land made under the provisions of this act, or any proceedings in accordance therewith, shall be construed to give any title to, interest in, or right of possession or occupation of any of the public lands of this State, unless the person for whose benefit the location is made or the proceeding taken shall have first taken and subscribed the following oath or affirmation."

(And here follows the form of oath, the substance of which is hereinbefore set forth.)

Section 28 succeeds those in which are defined the duties of the several State officers with reference to the disposition of the lands therein spoken of, and both of the §§ 28 and 29 are addressed to such officers, and prohibit them from issuing any certificate of purchase, or patent, until certified copies of the description of the land, and of the oath thereon indorsed, of originals previously filed with the Recorder of the county, have been filed in the office of the State Register. (Stats. 1863, pp. 600, 601.)

It is not necessary to consider the possible consequences of the issuance of a certificate of purchase, or patent, when the certified copy of the description and oath has not been filed. The defendant here did not offer to prove that such certified copy of a description from the Recorder's office, or of an indorsed oath by Clark, was not filed with the State Register prior to the time when the certificate of purchase was issued to him. If such copy was so filed, the certificate of purchase was properly issued to Clark, who was the only person whom the officers of the State could treat with as the party for " whose benefit" the proceedings had been taken. To say that the State officers were *deceived*, and the State thereby defrauded, is but to restate the point already considered. The defendant cannot claim to represent the State.

Appellant also claims that the patent is void, because the Clark application was not verified as required by §§ 4 and 5 of the act. (Stat. 1863, p. 593.)

The fifth section has no bearing upon the facts exhibited by the record before us.

The affidavit of Clark, which was offered in evidence by defendant, complied, in every particular, with the requirement of § 4. The affidavit of Avy and John and Henry Malcombe, offered in evidence by defendant as being that which accompanied the application and affidavit of Clark, complied substantially with the provision of the same section, and " verified " all the sworn statements of Clark, except the statements that he was a citizen, a resident of California, and of lawful age. The question which remains is, Is the patent issued to plaintiff, as

assignee of the certificate of purchase issued to Clark, void because of these omissions in the affidavit of the verifying witnesses?

The statute attaches no such fatal consequence, in terms, to an omission in any affidavit. Where a " contest " has arisen and the question submitted to the District Court—which of the contesting parties, if either, has the right to purchase from the State?—it has been held that certain omissions in the application or affidavits render the application so defective as that the applicant may not base a claim to purchase upon it. ( *Cunningham* v. *Crowley*, 51 Cal. 128.) No case has decided, however, that such an omission can destroy the effect of a *patent* as evidence of title in an action against a mere trespasser or occupant. The statute directs that evidence of certain facts shall take the form of affidavits. It does not follow, however, that every departure from the forms of the statute, or a failure to cumulate evidence of facts peculiarly within the knowledge of the applicant, shall operate as absolute abscission of the right of the State officers to issue a certificate or patent. The land belonged to the State ; laws had been passed providing for the disposition of it; the State selected agents to determine whether the acts required to be performed by the applicant had in fact been done, and, if they should adjudge that these facts had been performed, to issue the certificate and patent. For the protection of those asserting adverse claims to purchase from her officers, the State further provided a mode by which, upon the demand of either of the contesting parties, the contest might be relegated to the general tribunals for determination. It was certainly in the power of the State to dispose of her own lands in any mode or on any terms she thought proper. The officers of the State, in whom was vested the appropriate authority, have issued the patent to the person they have decided to be entitled to it, and neither the State, nor any person in privity with the State title, has complained of the action of the proper officers. We do not think a mere intruder can complain.

The rule applicable to this class of cases was laid down in *Doll* v. *Meador*, (16 Cal. 325) and we do not understand that it has ever since been modified so as to remove the present case beyond its scope or application. It was there said : " If a patent

be void upon its face, it may be assailed at any time, and in all cases; for it is itself record evidence of the matter which renders it a nullity. If it be issued in the absence of legislation directing a disposition of the property described, or by an officer who is not invested with power to sign the same, or for an estate prohibited, its validity may also be controverted in any action, either directly or collaterally; but if the authority to issue the patent *depend upon the existence of particular facts in reference to the condition or location of the property, or the performance of certain antecedent acts,* and the officers have been appointed for the ascertainment of these matters in advance, who have passed upon them and given their judgment, then the patent, though the judgment of the officers be in fact erroneous, cannot be attacked collaterally by parties showing title subsequently from the same source, much less by those who show no color of title in themselves."

Judgment and order affirmed.

Ross, J., and McKee, J., concurred.